IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,       :
                              :

       Plaintiff,               :
                              :

           v.               :         Criminal Action No. 21-5-RGA
                              :

DAWINE HARMON,             :
                              :

       Defendant.            :

MEMORANDUM ORDER

There is a pending motion to suppress.  (D.I. 25).  The motion is fully briefed.  (*Id*., D.I. 27, 29, 32).  I heard oral argument on the motion on July 11, 2022.  The parties have agreed that no evidentiary hearing is necessary.   (D.I. 34).

The motion seeks to suppress firearms seized from Defendant's home, an incriminating statement Defendant gave the police after his warrantless arrest, and the contents of two iPhones that were seized "in plain view" at the time of his arrest, which were later searched pursuant to a search warrant that is not independently challenged.[1]  The parties' positions could not be further apart.  The main points of dispute are (1) whether there was probable cause at the time of Defendant's arrest to believe that Defendant had committed a crime, and (2) whether the fruits of the search warrant for Defendant's home should be suppressed because there was no substantial basis for the issuance of the warrant, and, if there was no substantial basis, whether the search is saved by the good faith exception.

---

[1] There was also a search warrant for Defendant's DNA.  It is not challenged.

The search warrant for the home was obtained November 17, 2020. (D.I. 25, Exh. I). Defendant was arrested without a warrant on November 19, 2020, at 9:20 a.m. (D.I. 25, Exh. IX). Later the same day, at 10:02 a.m., police executed the search warrant at the home, which concluded in about fifty minutes. (D.I. 25, Exh. IX). On November 24, 2020, police obtained the search warrant to search the two iPhones seized on November 19th. (D.I. 25, Exh. II).

The Government agreed at oral argument that if the arrest on the 19th was without probable cause, the statement that followed the arrest must be suppressed. (*See also* D.I. 27 at 11). Defendant's only challenge to the statement is that it was the product of an illegal arrest.

The essence of the probable cause dispute is based on the following facts, most of which are recited in the probable cause affidavit signed on November 17th. (D.I. 25, Exh. I). There was a shooting of an adult and a juvenile, who were together in a car with a third person, in New Castle County on November 4th. (*Id*. ¶ 3). There were two volleys of gunfire directed at the three occupants of the car, and two clusters of spent cartridge casings, which were of three different dimensions. (*Id*. ¶¶ 5-8, 12). Two of the three sets of casings were "a ballistic match" with shell casings obtained from other crime scenes. (*Id*. ¶¶ 14, 18). The adult shooting victim stated that the day before he had had an "altercation" with "several subjects" in a nearby neighborhood,[2] and they "may have been responsible for the shooting incident." (*Id*. ¶11). One shell casing had DNA which was identified through CODIS as being that of Defendant. (*Id.* ¶19). A stolen Kia Sorrento thought to be connected to the shooters was identified and recovered. (*Id.* ¶¶ 13-17, 20-21, 23). It yielded a fingerprint of another individual. (*Id*., ¶ 21). That individual disclaimed any knowledge of the shooting. (D.I. 25 at 4; D.I. 25, Exh. II, ¶ 20). Defendant's residence was verified, including his recent sighting at it. (D.I. 25, Exh. I, ¶ 24).

---

[2] Per Google Maps, the neighborhood, Rosegate, is about sixteen miles from Defendant's home.

Individuals who possess firearms often have various evidence relating to that possession in their residences or vehicles.  (*Id*. ¶¶ 27, 31).  One additional and undisputed fact, not recited in the probable cause affidavit, is that the County Police knew that Defendant was on federal supervised release by November 9th. (D.I. 25, Exh. VI; D.I. 27-1).  Whether the County Police knew what he was on federal supervised release for (broadly stated, straw purchasing firearms and conspiracy to distribute heroin (*United States v. Harmon*, No. 14-cr-43, D.I. 29 (D. Del. Mar. 12, 2015)) is not in the record.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d Cir. 1995).

I think, for probable cause purposes, a CODIS identification of an unknown DNA contributor is more than enough to establish that the DNA came from the identified person. I am not the first federal judge to come to that conclusion.  "[C]ourts both within this federal circuit and in New Jersey have concluded that a preliminary CODIS DNA match can itself be sufficient to support a finding of probable cause where the DNA sample being tested came from evidence reasonably connected to the alleged crime."  *Williams v. Reinhardt*, 2017 WL 452004, at *3 (D.N.J. Feb. 2, 2017) (citing two cases).

I think, notwithstanding the possibility of transference of DNA, that the DNA on the shell casing establishes, for probable cause purposes, that Defendant touched the shell casing.  Does this make Defendant one of the shooters, or show that he was present at the scene?  Not necessarily.  But that is not the right question. Does Defendant's contact with the shell casing create a "fair probability" that he was a participant in the shootings? *See Illinois v. Gates*, 462

U.S. 213, 238, 246 (1983) (requiring a "fair probability" of wrongdoing for probable cause but not the "certainty we associate with formal trials"). Relying upon common sense, I think the answer is yes. A person who is going to use, or might need to use, a firearm is likely going to want to be sure that it is properly loaded and ready for use. I would expect that such a person would generally self-load the gun. It's possible that someone else could have loaded the gun. It's possible that Defendant could have handled the ammunition before the gun was loaded. It's possible that Defendant could have innocently lent his gun to another person, or that persons unknown stole the gun from him. Such possibilities go to whether the Government would be able to prove a case at trial. But I do not think these possibilities detract from the most likely explanation of Defendant's DNA being on the shell casing is that he loaded the firearm and was one of the shooters.[3] I conclude that there was a fair probability that Defendant was one of the shooters, and therefore the arrest was valid and the subsequent statement will not be suppressed.

When Defendant was arrested in his vehicle, the police seized two iPhones that were "in plain view." (D.I. 25, Exh. VI). The police could not search the iPhones without a search warrant. *See Riley v. California*, 573 U.S. 373, 403 (2014). But they could seize them "to prevent destruction of evidence while seeking a warrant." *Id*. at 388. That is what the officers did here. Five days after their seizure, the police obtained a search warrant for the two iPhones. (D.I. 25, Exh. II). While the police had additional inculpatory evidence by November 24th, the same reasons that justified searching the phones as a repository of useful evidence November 24th existed on November 19th and would have then been immediately apparent to an

---

[3] As it turned out, Defendant had a convincing alibi for why he could not have been one of the shooters.

experienced police officer as justification for a "plain view" seizure so that the iPhones could be later lawfully searched.   I do not think there is a basis to suppress the seizure of the two iPhones.

I turn now to the search warrant for the home.

> When faced with a challenge to a [state court judge's] probable cause determination, a reviewing court must remember that its role is limited. It is not to conduct a *de novo* review. Rather, it simply ensures that the [state court judge] had a substantial basis for concluding that probable cause existed. Of course, such deference does not mean that reviewing courts should simply rubber stamp a [state court judge's] conclusions. But it does mean that the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993) (cleaned up; citations omitted).

The determination that there was probable cause to arrest Defendant leaves little room for Defendant's argument to suppress the fruits of the search of Defendant's home.  There was a substantial basis for the Justice of the Peace's issuance of the warrant.  Unlike an arrest, which only requires probable cause to believe Defendant committed a crime, a search warrant requires both probable cause to believe a crime was committed and that the place to be searched will produce evidence of the crime.  The evidence of probable cause is limited to the four corners of the search warrant.  I believe the CODIS identification provides evidence of Defendant's connection to the crime.  Defendant's home is the logical place to expect to find evidence of Defendant's connection to the firearm and ammunition used in the crime.  *See id.* at 1056 ("firearms[] are . . . the type[] of evidence likely to be kept in a suspect's residence").  The Justice of the Peace could give "considerable weight to the conclusions of [an] experienced [police officer] regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."  *United States v. Whitner,* 219 F.3d 289, 296 (3d Cir. 2000)

(quoting an earlier case).  I conclude that there was a substantial basis for the issuance of the warrant.[4]

Defendant argues that the search warrant was overbroad because of its inclusion of potential electronic evidence.  (D.I. 25 at 11-14).  To the extent the argument is that the warrant was overbroad, it is of no moment because what the police seized and the Government plans to use at trial – a firearm, maybe some ammunition – is not the subject of the arguably overbroad parts of the search warrant.  Thus, the firearm (and ammunition, assuming some was seized) would not be suppressed even if the electronics seized pursuant to the warrant were suppressed.  *See United States v. Christine*, 687 F.2d 749, 758-59 (3d Cir. 1982) (authorizing "redaction").[5]

Defendant also argues, somewhat in passing, that the search warrant was a general warrant.  (D.I. 25 at 12).  This argument primarily relies upon the words "any evidence" appearing in the search warrant.  But I think that is a misreading of the search warrant, which authorizes the filming of "any evidence located," which I would interpret to refer to the more specific listing of evidence to be seized.  Thus, whatever evidence the police seized pursuant to the warrant could be filmed.  Defendant's reading of the warrant as giving the police discretion to seize anything is unsound.  Thus, the search warrant is not a general warrant.

For the above reasons, the motion to suppress (D.I. 25) is DENIED.

/s/ Richard G. Andrews_____
United States District Judge

---

[4] Thus, I do not need to consider whether the "good faith" exception applies.  (*See* D.I. 27 at 10-11).

[5] Defendant also argues that the warrant did not specify that it was supposed to be executed in the daytime.  (D.I. 25 at 6 n. 36).  While the second page of the Application does not have a "cross-out" of the permission to execute at nighttime, the search warrant itself states that the search is it so be in the "day time."  (D.I. 25, Exh. I).  And there is no dispute that the search warrant was executed in the daytime.  I do not think there is any constitutional error in connection with authorization or execution relating to the time of execution.